NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  16-1987
_____

UNITED STATES OF AMERICA

v.

ANTHONY ELLIS,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-12-cr-00101-001)
District Judge: Honorable Cathy Bissoon
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 20, 2017

Before: AMBRO, VANASKIE, and SCIRICA, Circuit Judges

(Filed: June 5, 2017)

_____

OPINION*
_____

SCIRICA, *Circuit Judge*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Ellis appeals his conviction and sentence following his conditional guilty plea to a charge of conspiracy to distribute and possess with the intent to distribute heroin.[1] Ellis reserved his right to appeal the denial of his motion to suppress evidence, alleging the government's application for the authorization of electronic surveillance did not meet the requirements of 18 U.S.C. § 2518(3)(c). We have jurisdiction under 28 U.S.C. § 1291. We will affirm.

## I.

This case involves a heroin trafficking conspiracy and arises from an FBI investigation of a criminal organization, the East Hills Bloods, in Pittsburgh, Pennsylvania. The investigation was prompted by a series of violent incidents in the East Hills area of Pittsburgh, including the murder of an East Hills woman during a home invasion designed to steal a large quantity of heroin from an associate of the East Hills Bloods.

Between August 2011 and March 2012, the government applied for and obtained eight warrant authorizations to intercept calls and electronic messages sent from and received by telephones used by various members of the conspiracy. Special Agent David N. Hedges, a twenty-five year veteran of the FBI with specialized drug training, was the affiant for all eight applications. He had been the affiant on seventeen previous Title III investigations.

---

[1] Ellis pled guilty to Count One of the indictment, charging him with conspiring "to distribute and possess with intent to distribute 100 grams or more of . . . heroin," in violation of 21 U.S.C. § 846. *See* 21 U.S.C. § 841. Ellis was sentenced to 120 months' imprisonment with credit for time served, and four years of supervised release.

The District Court issued the first seven of these authorizations ("the Initial Authorizations") between August 2011 and February 2012. The Initial Authorizations permitted interception of calls and messages sent to and from telephone numbers used by several members and associates of the East Hills Bloods, including, *inter alia*, David Agurs, Ronald Ashby, and Anthony Lemon. Information obtained from these intercepts provided probable cause to believe these men were members of the East Hills drug trafficking conspiracy. Although the Initial Authorizations did not include the telephone used by Ellis, "Target Telephone #18," the intercepts of telephone communications by Agurs and Ashby included calls made to and received from Target Telephone #18 that revealed Ellis's participation in the conspiracy. In these telephone conversations, Ellis can be heard arranging drug sales and engaging in counter-surveillance with Agurs and Ashby.

On March 23, 2012, the Government submitted the application and supporting affidavit (collectively "the Application") that are the subject of this appeal. The Application sought to continue existing wiretaps and to tap telephones used by two additional coconspirators, one of which was Target Telephone #18 used by Ellis. The Application was accompanied by Special Agent Hedges's ninety-three page affidavit, which included a twenty-two page section dedicated to satisfying the necessity requirement under 18 U.S.C. § 2518(1)(c). The District Court granted approval to intercept calls and electronic messages sent to and from Target Telephone #18.

Based in part on information obtained from the interception of Target Telephone #18, Ellis was indicted by a grand jury in March 2013 on narcotics and firearms conspiracy charges. He unsuccessfully moved to suppress the evidence obtained pursuant to the Application on the ground it failed to meet the requirements of 18 U.S.C. § 2518(1)(c) and (3)(c). As noted, Ellis entered a conditional guilty plea waiving his right to appeal on any ground other than the suppression of evidence obtained through the Application. This appeal followed.

## II.

Ellis alleges the District Court erred in denying his motion to suppress communications to and from Target Telephone #18 intercepted pursuant to the March 2012 authorization because the affidavit in support of the Application did not meet the "necessity" requirement of 18 U.S.C. §§ 2518(1)(c) and (3)(c).

## A.

An application for an intercept authorization must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). We have generally called this the "necessity" requirement. *See, e.g.*, *United States v. Bailey*, 840 F.3d 99, 114 (3rd Cir. 2016). We review the District Court's determination that the Application contained a statement of necessity *de novo* and its determination of necessity for abuse of discretion. *United States v. Phillips*, 959 F.2d 1187, 1189 (3rd Cir. 1992).

The applicable investigative procedures generally include, *inter alia*, (1) visual and aural surveillance, (2) general questioning or interrogation under immunity grants, (3) regular search warrants, and (4) the infiltration of conspiratorial groups by undercover agents or informants. *United States v. Armocida*, 515 F.2d 29, 37 (3rd Cir. 1975). They may also include using a pen register or trap-and-trace device. *United States v. Killingsworth*, 117 F.3d 1159, 1163 (10th Cir. 1997). The application does not have to show these other techniques could not possibly succeed. *Armocida*, 515 F.2d at 37. Rather, the application must describe the facts and circumstances surrounding the investigation that establish a "factual predicate" sufficient to allow the issuing court to determine such techniques will likely be unsuccessful or too dangerous. *United States v. McGlory,* 968 F.2d 309, 345 (3rd Cir. 1992). Section 2518(3)(c) "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). An application should "be tested in a practical and commonsense fashion," and "the statutory burden on the government is not great." *Armocida*, 515 F.2d at 38. "[I]n determining whether this requirement has been satisfied, a court may properly take into account affirmations which are founded in part upon the experience of specially trained agents." *United States v. Williams*, 124 F.3d 411, 418 (3rd Cir. 1997) (quotation mark omitted).

**B.**

Ellis does not appear to contend, nor could he contend, the Application did not include a statement of necessity. Rather, he alleges the Application was defective for failing "to inform the issuing authority that the government conducted no traditional methods of investigation on *this* Appellant."

**i.**

Our cases do not explicitly say for what purpose interception must be "necessary." But their clear import shows that, at least where the government investigation targets a large conspiracy and the individuals whose communications will be intercepted are members of that conspiracy, the necessity requirement relates to the demonstrated or probable inadequacy or danger of other investigative techniques to achieve the specific goals pursued by the investigation at hand. *See United States v. Bailey*, 840 F.3d 99, 114–15 (3rd Cir. 2016) ("Law enforcement further determined that other, less invasive investigative techniques would also fail to reveal the full scope of the [conspiracy's] operations."); *see also Williams*, 124 F.3d at 418 (stating 18 U.S.C. § 2518(3)(c) is satisfied by showing, among other things, "the difficulty of penetrating an organization with a secretive nature and a propensity towards violence"). In *Bailey*, although confidential informants had already made controlled purchases from the leader of a drug-trafficking organization, we upheld interceptions of his telephone communications in part because "arresting [him] alone would have frustrated the goals of the broader investigation." *Bailey*, 840 F.3d at 114–15. Our sister circuits agree this is a proper reason. *See, e.g.*, *United States v. Reed*, 575 F.3d 900, 911 (9th Cir. 2009).

All eight applications in this case arose from an investigation of a large drug-trafficking conspiracy in east Pittsburgh. The Application's stated purpose was to "identify the remaining co-conspirators, the precise manner in which their criminal organization operates, and to dismantle the criminal organization through successful arrests and prosecutions of those involved." S. App'x. at 1003–04.[2] Thus, the Application could (and did) satisfy § 2518(1)(c) by showing other investigative techniques, even if used against Ellis, were or would likely be unable to achieve the goals of the overarching investigation to which the Application relates—*e.g.*, "identify[ing] the remaining co-conspirators, determin[ing] the precise manner in which their criminal organization operates," or uncovering the scope of a conspiracy of which Ellis was a member. Accordingly, we will evaluate the necessity of intercepting Target Telephone #18 in light of this purpose.

## ii.

Ellis argues the Application made only conclusory and speculative statements and did not set forth a factual predicate showing other investigative techniques were or would likely be unsuccessful if used specifically in relation to him. We disagree.

The Application explicitly bases its assertions on information obtained from law enforcement involved in the investigation and interpreted in light of the training and experience of Special Agent Hedges. This is precisely the type of information on which

---

[2] Citations to "S. App'x" refer to the appendix of the government's Response Brief for the United States of America and the pagination used therein.

7

our cases allow the issuing court to rely. *See United States v. Williams*, 124 F.3d 411, 418 (3rd Cir. 1997).

The Application asserts physical surveillance was conducted but had been of limited use. According to the Application, the conspirators were very familiar with the residents and extended families of the East Hills Public Housing Project where most of the drug trafficking occurred, S. App'x. at 1017–18, and engaged in counter-surveillance to identify outsiders and strange vehicles. *Id.* at 1018–19. The Application supports this with specific examples, including two instances where a coconspirator discovered police surveillance and discussed that discovery over the telephone with another coconspirator. *Id.* at 1019. Additionally, the Application describes failed attempts at video surveillance of the housing project and explains why future video surveillance and trash pulls in the housing project would likely fail. *Id.* at 1018.

The Application also asserts grand jury investigations, undercover investigations, informants, search warrants, and pen registers had failed or were unlikely to be successful for a number of reasons. To support these assertions, the Application uses several specific facts and examples involving the conspiracy as a whole, its members, and the members of the East Hills Bloods. These included, among others, a confidential informant who feared reprisal of specific, named members of the East Hills Bloods and believed these members were unlikely to cooperate due to a violent, retaliatory "code" followed by the East Hills Bloods, *id.* at 1012–13; the specific investigatory limitations of two existing confidential informants, *id.* at 1009; specific failed attempts to develop other informants, *id.* at 1010–

11; specific named individuals who were arrested—one of whom leaped from a second story window to avoid capture—yet did not provide useful information, *id.* at 1014; several members of the conspiracy who were demonstrably wary of police, *id.* at 1014–15; and the difficulty of infiltrating a gang in an area where the gang members grew up together. *Id.* at 1008–09. Finally, the Application incorporated the affidavits used in all seven of the Initial Authorizations.

Importantly, the Application states Ellis "has been identified as a member of the East Hills Bloods and a heroin trafficker." *Id.* at 991. The Application supports this assertion by setting out, in detail, nine intercepted conversations between Ellis (on Target Telephone #18) and two members of the East Hills Bloods, Damon Agurs and Ronald Ashby, in which Ellis arranged to sell heroin provided by Agurs and Ashby, *see id.* at 991–97; and two intercepted conversations between members of the East Hills Bloods and persons with two other telephone numbers who were in regular contact with Target Telephone #18. *See id* at 997–1000. Further, the Application describes pen register and trap-and-trace data collected from other target phones indicating Target Telephone #18 was in frequent contact with other members of the conspiracy and the East Hills Bloods. *Id.* at 1000–01. Additionally, the Application demonstrates Ellis's own wariness of the police and willingness to engage in counter-surveillance; it describes an intercepted call between Ellis and Agurs in which Agurs tells Ellis, "I got your back. I'm right here. I'll call you if [the police] make a move." *Id.* at 995. Thus, the Application demonstrated Ellis's direct involvement in the East Hills Bloods drug trafficking and "the difficulty of

9

penetrating" that organization due to its "secretive nature" and "propensity towards violence." *United States v. Williams*, 124 F.3d 411, 418 (3rd Cir. 1997); *see also United States v. Bailey*, 840 F.3d 99, 114–15 (3rd Cir. 2016) ("Continued physical surveillance was likely to be fruitless because most of the associates were surveillance conscious, avoiding locations that were visible to security cameras. They were also occasionally aware of surveillance vehicles when they were present (some of these defendants even alerted each other to the presence of surveillance vehicles).").

The District Court did not abuse its discretion in finding the Application contained a sufficient factual predicate to allow the issuing court to conclude other investigative techniques, even if used in relation to Ellis, had not and likely would not uncover the full scope of the conspiracy. *See United States v. Phillips*, 959 F.2d 1187, 1190 (3rd Cir. 1992).

## III.

Accordingly, we find the Application contained a statement of necessity and the District Court did not abuse its discretion in finding the statement contained a sufficient factual predicate. For these reasons, the judgment of conviction and sentence will be *affirmed*.